IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

CHARLES DAVID STAMPER                                                    PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:11cv546-DPJ-FKB

ERIC SHINSEKI, Secretary, Department                                    DEFENDANTS
of Veterans Affairs, et al.

ORDER

This race-discrimination and retaliation case is before the Court on motions to dismiss filed by Defendants Roy Flores, National Vice President, District 10, American Federation of Government Employees, AFL-CIO ("AFGE") [78]; Eric Shinseki, Secretary for the Department of Veterans Affairs [80]; American Federation of Government Employees Local 589 ("Local 589") [92]; and Charles Jenkins, Nena Spencer, Kenny Knott, Wayne Dedmond, Luke McClinton, and Vera Norwood ("Individual Defendants") [103].

Although Stamper pursues a variety of federal and state-law claims, employment disputes of this nature usually proceed under the Civil Rights Act of 1964. The problem in this case is that Stamper either failed to file a timely complaint in federal court or appealed in the wrong venue. Moreover, Title VII may preempt essentially all of the remaining claims against all defendants leaving the Court without subject-matter jurisdiction. And even assuming jurisdiction, the claims suffer various other deficiencies, some of which could not be remedied in an amended pleading. Thus, as explained below, the Court concludes that the motions should be granted, but because the record remains incomplete and not all of these issues were addressed by the parties, the Court will provide a mechanism for Plaintiff to consider seeking leave to amend in certain respects.

I.       Facts and Procedural History

Plaintiff Charles David Stamper, a white male, worked as a supervisory radiological

technologist at the G.V. Sonny Montgomery Medical Center in Jackson, Mississippi, beginning

in May 2009.  He alleges that his immediate supervisors and union representatives were all

African-American and that "he was treated differently than other individuals because of his

race."  Second Am. Compl. [74] at 4.  He says that AFGE and Local 589, through their members,

"took affirmative steps to interfere with [Stamper's] contract of employment," ultimately

resulting in Stamper's termination on October 7, 2009.  *Id.* at 4, 5.

Following the termination of  his employment, Stamper filed a charge of discrimination

with the Department of Veterans Affairs Office of Employment Discrimination ("the EEO

department").  The EEO department issued Stamper a right-to-sue letter on September 28, 2010.

Stamper then filed a *pro se* lawsuit in the Eastern District of Tennessee on December 30, 2010,

which was transferred to this Court on August 24, 2011.  Six months later, Stamper filed a

Second Amended Complaint [74].

Though the Second Amended Complaint lacks clarity, it appears that Stamper alleges a

Title VII claim against Shinseki in his official capacity as Secretary of the Department of

Veterans Affairs and Flores in his official capacity as National Vice President of AFGE; race

discrimination claims against all defendants under 42 U.S.C. § 1981; state-law claims for

negligence, tortious interference with contract, and tortious interference with business relations

against all defendants; state-law claims for intentional infliction of emotional distress and slander

against Shinseki and Flores in their official capacities; a whistleblower retaliation claim under 5

U.S.C. § 2302(b)(8) against Shinseki and Flores in their official capacities; and a claim of unfair

labor practices under 5 U.S.C. §§ 7116 and 7120.  All defendants have moved for dismissal of all

claims against them, raising the defenses of lack of subject-matter jurisdiction and failure to state

a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(1), (6).

II.       Standard

Defendants seek dismissal under both Rule 12(b)(1) and Rule 12(b)(6).  "When a Rule

12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the

Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."  *Ramming v.*

*United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted).  A motion to dismiss for lack

of subject-matter jurisdiction should be granted "'when the court lacks the statutory or

constitutional power to adjudicate' the claim."  *In re FEMA Trailer Formaldehyde Prods. Liab.*

*Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n, Inc. v. City of Madison*,

143 F.3d 1006, 1010 (5th Cir. 1998)).  Finally, "[j]urisdiction cannot be waived, and it is the duty

of a federal court first to decide, sua sponte if necessary, whether it has jurisdiction before the

merits of the case can be addressed."  *Filer v. Donley*, 690 F.3d 643, 646 (5th Cir. 2012) (citation

omitted).

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as

true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v.*

*Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188

F.3d 322, 324 (5th Cir. 1999)).  However, "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007)).  To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a

claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "Factual allegations must

be enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote

omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678.

The Supreme Court's examination of the issue in *Iqbal* provides a framework for

examining the sufficiency of a complaint.  First, the district court may "begin by identifying

pleadings that, because they are no more than conclusions, are not entitled to the assumption of

truth." *Id*. at 679.  Second, "[w]hen there are well-pleaded factual allegations, a court should

assume their veracity and then determine whether they plausibly give rise to an entitlement to

relief." *Id*.

Ordinarily, a court decides a motion to dismiss for failure to state a claim looking only at

the face of the complaint; if "matters outside the pleadings are presented to and not excluded by

the court, the motion shall be treated as one for summary judgment." Fed. R. Civ. P. 12(d); *see*

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2011).  Documents attached to a

motion to dismiss that are "referred to in the plaintiff's complaint and . . . central to [his] claim,"

however, are considered part of the pleadings for purposes of a motion under Rule 12(b)(6).

*Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).  Additionally, the

Court may consider matters outside the pleadings in deciding a motion under Rule 12(b)(1).

*Ramming*, 281 F.3d at 161.

In this case, the parties have submitted several documents in support of and in opposition to the pending motions.  Some documents are properly before the Court as they are either referred to in the Complaint and central to Stamper's claims or are probative as to subject-matter jurisdiction.  *See* Notice of Right to Sue Letter and Signed Return Receipt [50-1, 50-2]; Walker Decl. [16-1]; Second Walker Decl. [27].  Others go outside the complaint and address the substantive merits of Stamper's claims.  *See* June 11, 2009 Meeting Notes [100-1, 100-2, 106-1, 106-2]; Flores Decl. [101-1]; Jenkins Decl. [107-1].  The Court has considered only the documents properly before it in ruling on Defendants' motions and declines to convert the Rule 12(b)(6) motions under Rule 12(d).[1]

Finally, Stamper's various responses include requests for a stay.  Those requests failed to comply with Local Rule 7(b)(3)(C), which states that "[a] response to a motion may not include a counter-motion in the same document."  Regardless, the requested stay would address only one of the numerous claims and is not otherwise supported.  This Order does, however, provide an opportunity for Stamper to seek leave to amend a few of his claims.  *See Iqbal*, 556 U.S. at 687 (directing circuit court to decide whether to remand to allow the respondent to "seek leave to amend his deficient complaint"); *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (holding that dismissal with prejudice should not occur "without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after repeated opportunities to do so").

---

[1]To the extent the EEO determination is not sufficiently invoked in the Complaint, then that portion of the record would be converted regarding the timeliness of the Title VII complaint.

Though the Court recognizes that Stamper has failed in several opportunities to develop a sufficient complaint, dismissal is without prejudice. First, not all of the issues raised in Defendants' motions were urged with respect to prior iterations of the complaint. Second, this Order is based in part on legal authority the parties have not adequately addressed. And finally, some of the issues turn on documents that are not in the record.

III.     Analysis

A.     Conceded Claims

Stamper has conceded the following claims against the following defendants: (1) all "stand alone" claims under the Civil Rights Act of 1991; (2) claims for libel and defamation as to all defendants; (3) intentional infliction of emotional distress ("IIED") claims against all defendants; (4) the whistleblower claims under 5 U.S.C. § 2302(b)(8) against Defendants Flores, Local 589, and the Individual Defendants; and (5) the Title VII claims against the Individual Defendants. These claims are dismissed with prejudice.[2]

B.     Disputed Claims

1.     Title VII

Stamper persists in his Title VII claim against Shinseki and Flores, who contend that the claim is unexhausted and/or untimely. Dismissal under Rule 12(b)(6) may be proper "where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some

---

[2]Stamper expressly conceded the IIED and libel/defamation claims against all Defendants as untimely, but as to Shinseki and Flores, Stamper took back the concession by suggesting that maybe the claims should have been tolled pending the EEO process. Stamper offers no authority for his contention, which appears incorrect. *See Dupree v. Hutchins Bros.*, 521 F.2d 236, 238 (5th Cir. 1975) ("Nor was the statute of limitations tolled by the pendency of Appellant's administrative complaint with the E.E.O.C."); *see also Crittendon v. Am. Nat'l Ins. Co.*, 967 F. Supp. 933, 938 (S.D. Tex. 1997) (citing *Dupree*).

basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (cited in

*Jaso v. Coca Cola Co.*, 435 F. App'x. 346, 351–52 (5th Cir. 2011)) (also citing 5B Charles Alan

Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 at 714–21 (3d ed. 2004)

("[T]he inclusion of dates in the complaint indicating that the action is untimely renders it subject

to dismissal for failure to state a claim.")).

Title VII "permits most federal employees to seek relief from proscribed discriminatory

employment practices in Federal District Court." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir.

2006). "As a precondition to seeking this judicial relief, . . . complaining employees must

exhaust their administrative remedies by filing a charge of discrimination with the EEO division

of their agency." *Id.* at 788. Following exhaustion, a plaintiff must file his lawsuit "[w]ithin 90

days of receipt of notice of final action taken by [the] agency . . . ." 42 U.S.C. § 2000e-16(c).

"The ninety-day window is 'strictly construed' and is 'a precondition to filing suit in district

court.'" *Duron v. Albertson's LLC*, 560 F.3d 288, 290 (5th Cir. 2009) (quoting *Taylor v. Books

A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002)). The failure to timely file is not, however,

jurisdictional. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 93 (1990).

In this case, Stamper concedes, as he must, that his initial complaint was filed beyond this

deadline. Stamper received the notice of final agency action on September 30, 2010. Def.

Shinseki's Mem. [50] Ex. 2, Return Receipt. Thus, he had until Wednesday, December 29,

2010, to file his complaint, which occurred one day later on December 30, 2010. Compl. [2].

Stamper's only response to this admitted defect is to argue that he filed numerous grievances and

appeals but no longer possesses the documentation, without which he "cannot concede this

issue." Pl.'s Resp. [102] at 2. He then requests a stay.

This argument, though underdeveloped in the record, fails to rebut the undisputed

evidence establishing the date Stamper acknowledged receipt of the EEO determination and the

date he filed.  But the argument says enough to muddy the water.  Significantly, the parties have

not adequately addressed whether Stamper's Title VII claim is a "mixed" claim.  Normally, a

claim of race discrimination would proceed through the EEO process.  But the Merit Systems

Protection Board ("MSPB" or "the Board") "has pendent jurisdiction over discrimination claims

brought in connection with an 'adverse action' otherwise appealable to it."  *Sloan v. West*, 140

F.3d 1255, 1259 (9th Cir. 1998) (citing 29 C.F.R. § 1614.302 (1997)), *cited favorably in Carter*

*v. Ridge*, 255 F. App'x 826, 833 (5th Cir. 2007).  "Adverse actions" include a "removal" from

employment.  5 U.S.C. § 7512(1).  Thus, it would appear that Stamper had a mixed claim.

> The administrative framework established to vet "mixed" cases under Title VII
> begins with a single election by the employee:  he may file a mixed-case
> complaint with the agency's EEO office or file a mixed-case appeal with the
> MSPB, but not both.  29 C.F.R. § 1614.302(b).  Whichever is filed first is then
> considered the employee's election, *id*., and once chosen, the employee must
> exhaust his remedies in that forum, *see Tolbert v. United States*, 916 F.2d 245,
> 248 (5th Cir. 1990) (holding that a federal employee must exhaust the elected
> avenue of administrative relief under Title VII actions).

*Devaughn v. U.S. Postal Serv.*, 293 F. App'x 276, 280 (5th Cir. 2008).  Here, Stamper pursued

both avenues, but the record fails to demonstrate which approach he pursued first.

If Stamper first pursed the MSPB process, then the timing of the EEO determination and

his delinquent federal complaint would lose significance while procedural problems with the

MSPB appeal would take center stage.  For example, employees seeking judicial review of

MSPB decisions must typically file with the Court of Appeals for the Federal Circuit.  5 U.S.C. §

7703(b)(1); *see Elgin v. Dep't of Treasury*, —U.S.—, 132 S. Ct. 2126, 2133 (2012).  An

exception exists for mixed-motives cases, where employees may pursue judicial review in the

federal district courts.  5 U.S.C. § 7703(b)(2); *see Elgin*, 132 S. Ct. at 2134.  But there exists an

exception to the exception when the MSPB dismisses an appeal for lack of jurisdiction or other

procedural infirmity.  In such circumstances, the majority of the circuit courts of appeals have

held that plaintiffs must seek review in the Federal Circuit "because that court has exclusive

jurisdiction over matters involving the scope of the MSPB's jurisdiction."  *Burrell v. U.S. Postal

Serv.*, 164 F. Supp. 2d 805, 810 (E.D. La. 2001); *see Kloeckner v. Solis*, 639 F.3d 834, 836–38

(8th Cir. 2011) (collecting cases and holding that where MSPB does not reach the merits of

discrimination claim, Federal Circuit has exclusive jurisdiction to review MSPB dismissal).

     Here, the MSPB dismissed Stamper's appeal for lack of jurisdiction because he was a

probationary employee and therefore had no right to appeal his termination to the MSPB.

Walker Decl. [27] Ex. 3 at 3.  The MSPB did not, therefore, reach the merits of any

discrimination claims, assuming Stamper raised them in his MSPB appeal.  Moreover, the

MSPB's decision notified him that any appeal therefrom should be filed with the Federal Circuit

Court of Appeals.  Walker Decl. [27] Ex. 3 at 5.

     Thus, assuming Stamper elected to pursue a mixed claim first with the MSPB proceeding,

only the United States Court of Appeals for the Federal Circuit would have jurisdiction to further

consider that claim, depriving this Court of jurisdiction and justifying dismissal without

prejudice.  If, on the other hand, Stamper first proceeded with the EEO department, then the

claim is untimely and should be dismissed with prejudice.  At this point, the Court lacks

sufficient information to determine which analysis applies.  Accordingly, the Title VII claim is

dismissed without prejudice and will proceed as directed below.[3]

> 2.        Whistleblower Claims

Stamper concedes the 5 U.S.C. § 2302(b)(8) whistleblower claims against all defendants

except Shinseki.  As to Shinseki, the Second Amended Complaint is not sufficiently pleaded to

determine how this claim differs from the Title VII retaliation claim—if it does at all.

Regardless, Stamper offered no real response to Shinseki's arguments, electing instead to seek a

stay.  For the following reasons, the Court finds that dismissal without prejudice is warranted as

with the Title VII claim.

Stamper alleges that "Defendant's is [sic] further liable for taking actions against Mr.

Stamper in reprisal for whistleblowing pursuant to 5 U.S.C. § 2302(b)(8)."  Second Am. Compl.

[74] at 7.  That statute "prohibits governmental agencies from taking adverse personnel actions

against [an] employee[] . . . because the employee . . . disclosed information that the employee . .

. believed evidenced a violation of law by the government or gross mismanagement of funds."

*Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369, 376 (5th Cir. 2007).  But as

Shinseki observes, an aggrieved employee does not have "the right to seek relief directly in

federal district court."  *Robinson v. Rubin*, 77 F. Supp. 2d 784, 793 (S.D. Tex. 1999) (citations

omitted).  Instead, the employee must first exhaust his administrative remedies.  According to

Shinseki, this never occurred because it is a mixed claim filed in the wrong court.

---

[3]Because of these defects, the Court need not address Defendants' additional reasons for
dismissal of this claim.

"[I]n a 'mixed motive case' involving both whistleblower and discrimination claims, an aggrieved federal employee can either (1) seek administrative relief through the Merit Systems Protection Board, . . . or (2) file a complaint with the employing agency's EEO department." *Id.* (citations omitted); *see* 5 U.S.C. §§ 1221(h), 7702.  And as noted above, Stamper filed both a complaint with the EEO department and an appeal of his termination to the MSPB.  It is not entirely clear whether the MSPB appeal form includes a whistleblower claim.  *Compare* Walker Decl. [27] Ex. 3 at 7 ("The union made it very clear that because I was caucasian that they would make it hard on me to be successful at Montgomery VA Medical."), *id.* at 8 ("Discrimination is a violation of the law and I was terminated for challenging the union telling me that they would make it hard for me because I was caucasian."), *and id.* at 9 (checking the appropriate box to indicate that a prohibited personnel practice of which he complained was "for cooperating with or disclosing information to the Special Counsel or the Inspector General of an agency"), *with id.* at 5 (declining to include "a claim of prohibited discrimination" or "a Whistleblower claim" with his appeal).   And the Court has not seen the EEO department complaint.  Assuming *arguendo* that the whistleblower claim was included in the MSPB appeal and EEO department complaint, then the whistleblower claim remains in the same posture as the Title VII claim—it is either untimely or in the wrong court.  The Title VII and whistleblower claims will be treated the same; Plaintiff's whistleblower claim is dismissed without prejudice.

        3.      Remaining Claims

Having dismissed the disputed Title VII claims, there may be little left to discuss.  Stamper's only remaining claims are based on 42 U.S.C. § 1981 and various state tort-law theories.  But "it is well settled that the provisions of Title VII of the Civil Rights Act applicable

to claims of racial discrimination in federal employment are the exclusive and preemptive

remedy for such claims." *Rowe v. Sullivan*, 967 F.2d 186, 189 (5th Cir. 1992) (citing *Brown v.*

*Gen. Servs. Admin.,* 425 U.S. 820, 829 (1976) (Title VII is the "exclusive, pre-emptive

administrative and judicial scheme for the redress of federal employment discrimination.") (other

citations omitted).  In *Pfau v. Reed*, the Fifth Circuit explained that it interprets the "mandate in

*Brown* to mean that, when a complainant against a federal employer relies on the same facts to

establish a Title VII claim and a non-Title VII claim, the non-Title VII claim is 'not sufficiently

distinct to avoid' preemption." 125 F.3d 927, 932 (5th Cir. 1997) (citing *Rowe,* 967 F.2d at 189;

*Jackson v. Widnall,* 99 F.3d 710, 716 (5th Cir. 1996)), *rev'd on other grounds*, 525 U.S. 801

(1998).[4]

Title VII's preemptive reach in the federal-employment context extends to both statutory

and common-law claims.  *See Sapp v. Potter*, 413 F. App'x 750, 753 (5th Cir. 2011) (dismissing

§ 1981 claim based on Title VII preemption); *Smith v. Harvey*, 265 F. App'x 197, 200 (5th Cir.

2008) (affirming dismissal of §1981 and state-tort claims); *Pfau,* 125 F.3d at 932 (affirming

dismissal of § 1981 and common law IIED claim).  Preemption also extends to parties other than

the employer.  *Pfau*, 125 F.3d at 932 ("Title VII's preemptive effect as to claims against

individual supervisors is coextensive with its preemptive effect as to claims against federal

agencies."); *Felan v. Runyon*, 9 F.3d 1547, 1993 WL 503372, at *2 (5th Cir. 1993) (affirming

dismissal of claims against all defendants other than employer); *Rowe*, 967 F.2d at 189

(affirming dismissal of claims against supervisor); *Newbold v. U.S. Postal Serv.*, 614 F.2d 46, 46

---

[4]After reversal, the Fifth Circuit reaffirmed the relevant portions of the case. *Pfau v.*
*Reed*, 167 F.3d 228, 229 (5th Cir. 1999).

(5th Cir. 1980) (affirming summary judgment of claims against union and other individual

defendants). It does not appear that Stamper directly responded to the preemption argument

when raised by the Individual Defendants.[5]

Applying *Pfau* to the Second Amended Complaint, it appears that Stamper's Title VII and

non-Title VII claims are insufficiently distinct to avoid preemption. Stamper's Second Amended

Complaint is unclear in many respects because it lumps together a series of conclusory

allegations. But even in its current form, Stamper's factual allegations all relate to the alleged

employment discrimination and retaliation that form the basis of his Title VII claims. This

would include the post-employment conduct alleged in paragraph 10. *See Robinson v. Shell Oil

Co.*, 519 U.S. 337, 339 (1997) (holding that a terminated employee could bring post-employment

retaliation suit for giving unfavorable reference). The Court concludes that it lacks jurisdiction to

hear the non-Title VII claims against all Defendants. *Pfau*, 125 F.3d at 932 (dismissing § 1981

and IIED claims).[6]

Having concluded that Stamper's claims are preempted, the Court must note that not all

Defendants raised this argument, and none raised it with respect to the state-law claims. The

Court would still have authority to dismiss the claims with prejudice on preemption grounds

because Stamper failed to address the issue when the Individual Defendants raised it related to

§ 1981 and because Title VII preemption is a matter of subject-matter jurisdiction. *See Smith v.*

---

[5]Stamper does cite *Wesley v. General Drivers, Warehousemen & Helpers Local 745*, where the Fifth Circuit allowed a § 1981 claim against a union. 660 F.3d 211, 212 (5th Cir. 2011). But *Wesley* did not involve federal employment.

[6]Paragraph 10 of the Second Amended Complaint also references 5 U.S.C. §§ 7116 and 7120, but those sections create no private causes of action. *See Karahalios v. Nat'l Fed'n of Fed. Emps., Local 1263*, 489 U.S. 527, 531 (1989).

13

*Harvey*, 265 F. App'x 197, 201 (5th Cir. 2008) (affirming the district court's 12(b)(1) dismissal

of the plaintiff's state-law tort claims as preempted by Title VII); *Filer*, 690 F.3d at 646 (holding

that court has duty to consider jurisdiction *sua sponte*).  But while that authority may exist, the

Court elects not to exercise it because there may be reason why the parties did not pursue this

argument.  The claims are dismissed without prejudice, and if the Court is mistaken in its

analysis, any error can be corrected as discussed below.

> 4.      Alternative Problems with Second Amended Complaint

If Stamper can somehow convince the Court that his other claims are not barred by Title

VII, the Second Amended Complaint still suffers from a variety of deficiencies, some of which

can be cured by amendment while others cannot.  Thus, in the event an amended pleading is

ultimately allowed, the following issues must be addressed.

> a.      Rule 12(b)(6) and *Iqbal/Twombly*

As a general matter, Stamper's § 1981 and state-law claims against Shinseki,

Flores/AFGE,[7] Local 589, and the Individual Defendants are not sufficiently pleaded.  Assuming

he could overcome preemption, Stamper may be able to sufficiently plead some of his other

claims against someone, but he has yet to do so.  The Second Amended Complaint lumps the

alleged conduct and claims together without differentiating the basis for liability as to each

defendant, leaving nothing more than "an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Twombly*, 550 U.S. at 555.  Stamper seemed to miss this aspect of Defendants'

---

[7]Flores often argues that the Second Amended Complaint fails to make any averments
that he was personally involved in any of the disputed events.  Stamper seems to acknowledge as
much, indicating that Flores was sued in a representative capacity.  For example, Stamper treats
Flores's motion as "AFGE's Motion."  Pl.'s Resp. [100] at 1.  To the extent any claims are
asserted against Flores individually, they are dismissed under Rule 12(b)(6).

memoranda, arguing that he had stated a claim without recognizing Defendants' argument that he must say how they are individually liable for the conduct he alleged (*e.g.*, by establishing a basis for vicarious liability).  Essentially all remaining claims suffer from this defect.

b.      Defective Tort Claims

Stamper asserts a variety of tort claims against all Defendants, some of which he has conceded to dismissal.  The others are subject to different analysis for Shinseki and the remaining defendants.  The Court will look first to Shinseki's arguments before turning to those asserted by the remaining defendants.

Stamper sued Shinseki in his official capacity as the Secretary for the Department of Veteran's Affairs, Stamper's employer.  There are two issues the parties must better address if the tort claims overcome preemption.  First, Shinseki invokes sovereign immunity, claiming that Plaintiff has failed—presumably in his Second Amended Complaint—to "provide any federal authority which provides a cause of action against a federal agency for the alleged state law claims."  Def. Shinseki's Mem. [81] at 5.  But neither party adequately explores the scope of the Federal Tort Claims Act as it relates to this portion of the motion.  Shinseki next contends that Stamper failed to exhaust under the FTCA, which "bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."  *McNeil v. United States*, 508 U.S. 106, 113 (1993).  Stamper does not substantively address the issue, stating instead that he needs the documents from Defendants to establish exhaustion.  If Stamper filed a grievance with the VA, then he was "not required . . . to specifically enumerate legal theories of recovery in the[] administrative claims."  *Life Partners Inc. v. United States*, 650 F.3d 1026, 1030 (5th Cir. 2011) (citation omitted).  "As long as 'the Government's investigation of [the] claim should have

15

revealed theories of liability other than those specifically enumerated therein, those theories can properly be considered part of the claim.'" *Id.* (citing *Rise v. United States*, 630 F.2d 1068, 1071 (5th Cir. 1980)).  The Second Amended Complaint fails to establish exhaustion, so dismissal is warranted.  But without seeing the administrative claim, assuming there is one, it is impossible to know whether Stamper meets these requirements, so dismissal is without prejudice.

As for the remaining Defendants, Stamper's negligent infliction of emotional distress claim is dismissed with prejudice for lack of demonstrable harm.  *See Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196, 1209 (Miss. 2001) ("A plaintiff . . . may not recover emotional distress damages resulting from ordinary negligence, without proving some sort of physical manifestation of injury or demonstrable physical harm.").  Stamper's only real response to this argument is that his are not "garden variety negligence" claims and instead involve "malicious, intentional, and outrageous" conduct.  Pl.'s Resp. [100] at 10.  But he has already conceded his IIED claim as untimely.  Thus, if the claim can survive preemption, it would be dismissed without prejudice.

The negligent hiring, retention, training, and supervision claims would be dismissed without prejudice if they survived preemption.  Defendants argue that they cannot be held liable because none of them employed Stamper and because the claims are barred by the exclusivity provisions of the Mississippi Workers' Compensation Act.  *See, e.g.*, Def. AFGE's Mem. [79] at 15–16.  Defendants' first argument fails because "[i]t has long been established that an employer will be liable for negligent hiring or retention of his employee when an employee injures a third party if the employer knew or should have known of the employee's incompetence or unfitness." *Doe ex rel. Brown v. Pontotoc Cnty. Sch. Dist.*, 957 So. 2d 410, 417–18 (Miss. Ct. App. 2007)

(citing *Eagle Motor Lines v. Mitchell*, 78 So. 2d 482, 486–87 (Miss. 1955)).  Defendants' second

argument likewise fails because the exclusivity of worker's compensation "shall not affect the

right of the employee or his dependents to sue any other party at law for such injury . . . ."  Miss.

Code Ann. § 71-3-71.[8]

Although Defendants' substantive arguments fail, procedural defects remain.  As with the

rest of the Second Amended Complaint, these claims are conclusorily pleaded with no specific

allegations of wrongdoing as to any particular defendant.  *See Twombly*, 550 U.S. at 555.

Therefore, they will be dismissed without prejudice.  If Stamper attempts to amend, he must

delineate the alleged conduct of the various defendants.  And if liability is vicarious, he should

plead facts sufficient to demonstrate the agency relationships.

Finally, the tortious interference claims are also dismissed without prejudice.  In another

example of conclusory pleading, Stamper avers that "Defendants, AFGE; Mississippi Local 589;

Charles Jenkins; Nena Spencer; Kenny Knott; Wayne Dedmond; Luke McClinton; and Vera

Norwood are liable for tortious interference with business relations and tortious interference with

contract."  Second Am. Compl. [74] ¶ 9.  The Individual Defendants challenge the sufficiency of

these claims in their motion, and Flores and Local 589 join the attack in their reply briefs.  For

the reasons articulated by Defendants, the Court agrees that these claims do not meet the pleading

standard articulated by the Supreme Court in *Iqbal* and *Twombly*, so they will be dismissed

---

[8]Local 589 also asserts, in its reply, that it "does not have any employees."  Def.'s Reply
[107] at 4.  This assertion goes beyond the pleadings and does not justify dismissal under Rule
12(b)(6).  And the Court concludes that conversion under Rule 12(d) is not appropriate at this
stage in the proceedings.

without prejudice to Stamper's right to re-plead to address the deficiencies noted by Defendants

if he can otherwise overcome preemption.

IV.    Conclusion

The Court has considered all the parties' arguments.  Those not addressed would not have

changed the result, although the Court notes that some of the Defendants' arguments would offer

further grounds for dismissal.  For the foregoing reasons, the motions to dismiss [78, 80, 92, 103]

are granted with the following disposition of the various claims.

Stamper's conceded claims are dismissed with prejudice:  (1) all "stand alone" claims

under the Civil Rights Act of 1991; (2) claims for libel and defamation as to all defendants; (3)

whistleblower claims under 5 U.S.C. § 2302(b)(8) against Defendants Flores, Local 589, and the

Individual Defendants; and (4) all Title VII claims against the Individual Defendants.  The Court

also dismisses the IIED claims with prejudice as they were essentially conceded and meritless.

Dismissal with prejudice is also granted for all Defendants as to any claims under 5 U.S.C.

§§ 7116 and 7120.

The following additional claims are dismissed without prejudice, subject to the

procedures discussed below:  (1) the Title VII claims against Shinseki and Flores/AFGE; (2) all

whistleblower claims under 5 U.S.C. § 2302(b)(8) against Shinseki; (3) § 1981 claims against all

parties; and (4) all non-conceded state-law claims against all Defendants.

Finally, because the Court based this ruling on certain arguments that were not raised by

the parties, and because it believes that Stamper is entitled to receive documentation regarding

his various administrative actions, it will allow a procedure for a potential amendment.  The

parties are instructed to contact the Magistrate Judge within one week of this Order to set a

telephonic conference to discuss production of documents related to Stamper's EEO and MSPB

claims and any other exhaustion attempts.  The Magistrate Judge will then set a deadline for

production and a second deadline for Stamper to file a motion seeking leave to file a third

amended complaint after receipt of the documents, if any.

If Stamper concludes that there is no basis for seeking leave to amend, he must file a

response to this Order conceding dismissal with prejudice by the motion deadline established by

the magistrate judge.  Failure to comply will likewise result in dismissal with prejudice.  If, on

the other hand, Stamper believes he can in good faith seek leave to amend consistent with the

rulings in this Order, he should file such a motion and attach a proposed third amended

complaint.  Stamper is expressly instructed that such a complaint must plead "factual content that

allows the court to draw the reasonable inference that [each] defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678.  In complying with this portion of the Order,

Stamper should pay particular attention to those deficiencies Defendants noted, especially with

respect to the basis for attaching liability to each named defendant.  Stamper has had several

opportunities to plead his case, and dismissal may be warranted if he produces a proposed third

amended complaint that remains futile.  Finally, if Defendants challenge the motion for leave to

amend, then all parties are instructed to address the legal issues raised in this Order along with

any others they deem relevant.

**SO ORDERED AND ADJUDGED** this the 24th day of October, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE